UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

DIVINE MOTEL GROUP, LLC
d/b/a ROYAL INN,

                    Plaintiff,

vs.                                              Case No.  3:14-cv-31-J-34JRK

ROCKHILL INSURANCE COMPANY,

                    Defendant.
_____/

# O R D E R

**THIS CAUSE** is before the Court on Defendant's Motion for Summary Judgment (Doc. 45; Rockhill Motion), filed on September 5, 2014,[1] and Plaintiff's Motion for Partial Summary Judgment and Supporting Memorandum of Law (Doc. 65: Divine Motion), filed on October 31, 2014.  The parties have filed responses in opposition to the respective motions. See Plaintiff's Response in Opposition to Defendant's Motion for Summary Judgment and Supporting Memorandum of Law (Doc. 57; Divine Response), filed September 30, 2014; Defendant's Response in Opposition to Plaintiff's Motion for Partial Summary Judgment and Memorandum of Law (Doc. 69; Rockhill Response), filed November 24, 2014.  In addition, with leave of Court, Rockhill filed a reply in support of the Rockhill Motion on October 16, 2014.  See Defendant's Reply Brief to Plaintiff's Response in Opposition to Defendant's Motion for Summary Judgment (Doc. 63; Rockhill Reply).  Accordingly, this matter is ripe for review.

---

[1] Simultaneously with its Motion, Defendant Rockhill Insurance Company also filed a Request for Oral Argument (Doc. 46).  However, upon review of the Motions and Responses, the Court finds that oral argument is not necessary to the resolution of this matter.

## I.      Standard of Review

Under Rule 56, Federal Rules of Civil Procedure (Rule(s)), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Rule 56(a).  The record to be considered on a motion for summary judgment may include "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Rule 56(c)(1)(A).[2]  An issue is genuine when the evidence is such that a reasonable jury could return a verdict in favor of the nonmovant.  See Mize v. Jefferson City Bd. of Educ., 93 F.3d 739, 742 (11th Cir. 1996) (quoting Hairston v. Gainesville Sun Publ'g Co., 9 F.3d 913, 919 (11th Cir. 1993)).  "[A] mere scintilla of evidence in support of the non-moving party's position is insufficient to defeat a motion for summary judgment." Kesinger ex rel. Estate of Kesinger v. Herrington, 381 F.3d 1243, 1247 (11th Cir. 2004) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986)).

The party seeking summary judgment bears the initial burden of demonstrating to the court, by reference to the record, that there are no genuine issues of material fact to be determined at trial.  See Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991).

---

[2]      Rule 56 was revised in 2010 "to improve the procedures for presenting and deciding summary-judgment motions."  Rule 56 advisory committee's note 2010 Amendments.

> The standard for granting summary judgment remains unchanged.  The language of subdivision (a) continues to require that there be no genuine dispute as to any material fact and that the movant be entitled to judgment as a matter of law.  The amendments will not affect continuing development of the decisional law construing and applying these phrases.

Id.  Thus, case law construing the former Rule 56 standard of review remains viable and is applicable here.

"When a moving party has discharged its burden, the non-moving party must then go beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." Jeffery v. Sarasota White Sox, Inc., 64 F.3d 590, 593-94 (11th Cir. 1995) (internal citations and quotation marks omitted).  Substantive law determines the materiality of facts, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  Anderson, 477 U.S. at 248.  In determining whether summary judgment is appropriate, a court "must view all evidence and make all reasonable inferences in favor of the party opposing summary judgment."  Haves v. City of Miami, 52 F.3d 918, 921 (11th Cir. 1995) (citing Dibrell Bros. Int'l, S.A. v. Banca Nazionale Del Lavoro, 38 F.3d 1571, 1578 (11th Cir. 1994)).

## II.    Background[3]

This action arises out of an insurance contract dispute between Plaintiff Divine Motel Group, LLC d/b/a Royal Inn (Divine) and its insurer, Defendant Rockhill Insurance Company (Rockhill).  See Complaint (Doc. 2).  Divine Motel Group, LLC purchased a small motel, located at 966-968 Ohio Avenue, Live Oak, Florida (the Property), from Columbia Bank on June 20, 2012, for $105,000.00.  See Deposition of Jitendra Desai (Doc. 47-3; Desai Dep.)

---

[3] Because this case is before the Court on cross-motions for summary judgment, the Court will, when addressing the merits of either party's motion, view the facts presented in the light most favorable to the party opposing summary judgment.  The Court will so note its perspective when appropriate.  The facts recited in this section are either undisputed, or any disagreement has been indicated.  See T-Mobile South LLC v. City of Jacksonville, Fla., 564 F. Supp. 2d 1337, 1340 (M.D. Fla. 2008).

at 47-48.[4]  The Property consists of two, two-story motel buildings, referred to as Building

A, on the north side of the Property facing west, and Building B, on the south side of the

Property facing north.  <u>See</u> Complaint, Ex. B at 2-3.  At the time of purchase, Rockhill issued

insurance policy, No. RPKGGBS000832, insuring the Property for a period from June 20,

2012, to June 20, 2013.  <u>See</u> Complaint, Ex. A (Doc. 2-1; Policy).  The Policy is an "all-risk"

insurance policy which provides coverage for "Risks of Direct Physical Loss unless the loss

is:  1. Excluded in Section B., Exclusions; or 2. Limited in Section C., Limitations; that follow."

<u>See</u> Policy at 76 (Part A.1.-2.)[5]; Divine Motion, Ex. C (Doc. 65-3; Bowler Dep.) at 44.  The

Limitations section contains, in relevant part, the following limitation:

> 1. We will not pay for loss of or damage to property, as described and limited
> in this section.  In addition, we will not pay for any loss that is a consequence
> of loss or damage as described and limited in this section. . . .
>
>> c. The interior of any building or structure, or to personal property in the
>> building or structure, caused by or resulting from rain, snow, sleet, ice,
>> sand or dust, whether driven by wind or not, unless:
>>
>>> (1) The building or structure first sustains damage by a Covered
>>> Cause of Loss to its roof or walls through which the rain, snow,
>>> sleet, ice, sand or dust enters . . . .

<u>See</u> Policy at 80 (Part C.1.c.).  The Policy also sets forth certain Exclusions relevant to

Divine's claims.  Specifically, paragraph B. 2. of the Causes of Loss - Special Form provides

that Rockhill "will not pay for loss or damage caused by or resulting from . . . d.(1) Wear and

tear; (2) Rust or other corrosion, decay, deterioration, hidden or latent defect or any quality

---

[4] Jitendra Desai formed Divine Motel Group, LLC approximately two weeks prior to the purchase and
he is its sole member.  <u>See</u> Desai Dep. at 126-27.

[5] For ease of reference, the page numbers cited with respect to the Policy are the ECF page numbers
corresponding to Document 2-1, where the Policy is located in the record.

in property that causes it to damage or destroy itself." <u>See</u> Policy at 77 (Part B.2.d.(1)-(2)). This exclusion does contain an exception that "if an excluded cause of loss that is listed in 2.d.(1) through (7) results in a 'specified cause of loss' or building glass breakage, we will pay for the loss or damage caused by that 'specified cause of loss' or building glass breakage." <u>Id.</u> at 78 (Part B.2.d.).[6]

Paragraph B.3. sets forth another exclusion relevant to this case. The "faulty workmanship exclusion" provides that Rockhill:

> will not pay for loss or damaged caused by or resulting from any of the following . . .
>
> c. Faulty, inadequate or defective: . . .
>
>> (2) Design, specifications, workmanship, repair, construction, renovation, remodeling, grading compaction; . . . [or]
>>
>> (4) Maintenance
>
> of part or all of any property on or off the described premises.

<u>Id.</u> at 78-79 (Part B.3.c.). This exclusion contains the following exception: "if an excluded cause of loss that is listed in 3.a. through 3.c. results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss." <u>Id.</u> at 78 (Part B.3.). In addition, the Policy requires a five percent deductible for any loss or damage "caused directly or indirectly by Windstorm or Hail, regardless of any other cause or event that

---

[6] The term "Specified Cause of Loss" is defined in paragraph G.2. as "Fire; lightning; explosion; windstorm or hail; smoke; aircraft or vehicles; riot or civil commotion; vandalism; leakage from fire extinguishing equipment; sinkhole collapse; volcanic action; falling objects; weight of snow, ice or sleet; water damage." <u>See</u> Policy at 84. In paragraph G.2.c., the Policy defines water damage as "accidental discharge or leakage of water or steam as the direct result of the breaking apart or cracking of a plumbing, heating, air conditioning or other system of appliance (other than a sump system including its related equipment and parts), that is located on the described premises and contains water or steam." <u>Id.</u>

contributes concurrently or in any sequence to the loss or damage." <u>See</u> Policy at 73.  Thus, pursuant to the Policy, Rockhill is not obligated to "pay for loss or damage until the amount of loss or damage exceeds the applicable Deductible." <u>Id.</u>

On June 25, 2012, five days after Divine's purchase of the Property, Tropical Storm Debby caused damage to the Property.  <u>See</u> Complaint ¶ 9; Amended Answer, Affirmative Defenses and Demand for Jury Trial (Doc. 52; Answer) ¶ 9.  Divine timely reported the loss to Rockhill.  <u>See</u> Complaint ¶ 10; Answer ¶ 10.  Rockhill retained HSA Engineers and Scientists (HSA) "to inspect and assess the damage" to the Property.  <u>See</u> Complaint ¶ 11; Answer ¶ 11.  On August 28, 2012, HSA issued a "Cause and Origin Damage Report" in which HSA identified several leaks in the Property buildings, as well as moisture damage to the interior of the Property stemming from, or exacerbated by, Tropical Storm Debby.  <u>See</u> Complaint, Ex. B (HSA Report) at 1-2.  However, according to the HSA Report, "[t]he referenced moisture-related damage to Building A and Building B were not caused by breaches through the building envelopes as a result of elevated wind forces associated with Tropical Storm Debby."  <u>See</u> HSA Report at 3.  On September 11, 2012, Rockhill sent a letter to Divine denying its claim based on the results of the HSA Report.  <u>See</u> Complaint, Ex. C.  In the letter, Rockhill explained that "in order for there to be coverage, wind has to cause damage to the exterior of the buildings.  Therefore, we regret to inform you that . . . there is no coverage for your claim." <u>Id.</u>, Ex. C at 2.  Rockhill then referenced the aforementioned provisions of the Policy, among others, as support for its decision.  <u>Id.</u>, Ex. C at 3-7.

To assess the damage caused by Tropical Storm Debby, the parties rely on the testimony of three individuals: Brian O'Connor, Michael W. Linehan, and Thomas Miller. Brian O'Connor is a licensed property and casualty adjuster and the executive general adjuster at Engle Martin & Associates.  See Divine Response, Ex. A (Doc. 57-1; O'Connor Deposition) at 17.  O'Connor inspected the Property on July 6, 2012, at the behest of Rockhill, to "determine[] the damage to the building, what happened, develop a scope, identify any type of wind damage to the building, and then report back to the insurance company."  See O'Connor Dep. at 23-26.  O'Connor testified that he observed openings in the roof that allowed water to enter the building, specifically "deteriorated sealants around the plumbing jacks" and "areas where the – where the roof had – had splits in it that were old that could of allowed water to enter into the building."  Id. at 62.  Significantly, O'Connor stated that he did not identify any wind-related damage from Tropical Storm Debby that created an opening in the buildings.  Id. at 64.  However, O'Connor did identify three areas on Building B where "pieces of cap" were "pulled back," and stated that he was unable to determine whether this peeled back section of roof was caused by wind from Tropical Storm Debby.  Id. at 37, 64-66.  Also, O'Connor was uncertain as to whether water was able to enter the building through these portions of the roof.  Id. at 37.  Because he was unable to determine whether these lifted sections of roof were related to Tropical Storm Debby, O'Connor recommended obtaining an expert opinion on the matter.  Id. at 37-38, 74.

Engle Martin then retained Michael W. Linehan, a registered Florida professional engineer, a registered roof consultant, and the senior structural engineer at HSA (now known as CRA), "to examine the [Property], document damages [Linehan] found, and to determine

the cause and origin of the damages, and specifically to answer whether the documented damages were the result of Tropical Storm Debby." See Divine Response, Ex. B (Doc. 65-2; Linehan Dep.) at 12-13, 17, 28, 33.   On July 12, 2012, Linehan conducted a visual, nondestructive assessment of the Property, see Linehan Dep. at 24, and on August 28, 2012, he issued the HSA Report in which he summarized his assessment of the damages as follows:

- Stains and deterioration of interior wall finishes, ceiling finishes, and wood-framed components of the structure, identified in this report as **Building A**, were consistent with damage caused by exposure to moisture that originated from the following locations:
  - Leaks through the roof envelope as a result of deterioration of the roof coverings and waterproofing sealants, deficient roof repairs, and a general lack of maintenance of the roof surface. Although the heavy rains associated with Tropical Storm Debby exacerbated the referenced moisture-related damage, the leakage through the roof envelope had been a long-term and on-going condition;
  - Leaks through the bottom of the exterior entry doors and sliding glass doors of the individual room units of **Building A**, as a result of wind-driven rain associated with Tropical Storm Debby.

- Stains and deterioration of interior wall finishes and interior wall components of the structure, identified in this report as **Building B**, were consistent with damage caused by exposure to moisture that originated from the following locations:
  - Leaks through the exterior two-story south concrete masonry unit (CMU) wall as a result of a temporary overwhelming and saturation of portions of the referenced CMU wall components in response to wind-driven rain associated with Tropical Storm Debby.
  - Deficient waterproofing of openings made through the south CMU wall for apparent air conditioning units.  The referenced deficient waterproofing had been a long-term and on-going condition.
  - Leaks through the bottom of the exterior entry doors and sliding doors of the individual room units of **Building B** as a result of wind-driven rain associated with Tropical Storm Debby.

- The referenced moisture-related damage to **Building A** and **Building B** were not caused by breaches through the building envelopes as a result of elevated wind forces associated with Tropical Storm Debby.

- Deterioration of portions of the wood-framed components in the vicinity of the first story south CMU wall of **Building B** was consistent with damage caused by insect activity.

- Horizontal, vertical, and stair-step patterned cracks in portions of the painted CMU finishes of **Building A** and **Building B**, and cracks in portions of the wall and ceiling finishes in **Building B** were consistent with damage caused by differential settlement of the foundations of the referenced buildings. The referenced cracks were long-term conditions and were not the result of damage associated with Tropical Storm Debby.

See HSA Report at 1-2.  At his deposition, Linehan reaffirmed the findings in his Report stating that while Tropical Storm Debby caused "extensive moisture damage" to the Property, "there was no evidence of breaches through the building envelope as a result of wind-related damage."  See Linehan Dep. at 34.  Indeed, Linehan was specifically tasked with determining the effects of Tropical Storm Debby and the wind component of the storm, and testified that he did not discover any wind damage.  Id. at 62.  Linehan stated that "all of the breaches to the building envelope were preexisting conditions prior to Tropical Storm Debby," and that the wind-driven rain of Tropical Storm Debby did not damage any of the Property's exterior.  Id. at 62-63

In his deposition, Linehan explained that water likely infiltrated Building A through numerous portions of the roof where the cap sheet was unadhered, but opined that "all of the unadhered nature of the cap sheets were not adhered prior to Tropical Storm Debby." Id. at 45-46.  Indeed, Linehan maintains that, based on a totality of the evidence, wind can be ruled out as a contributing cause to the debonding of the cap sheet or delamination of the

roof. Id. at 55-56. Specifically, Linehan relies on the lack of torn or missing portions of the cap sheet, the lack of a pattern of damages consistent with wind damage, the poor condition of the roof in general, and the fact that other, more vulnerable portions of the roof were not affected by the storm. Id. at 47-48. Moreover, whereas O'Connor was unsure whether water entered Building B through the peeled back portions of the roof, Linehan testified that he "found no evidence that water entered Building B through the roof envelope," rather the "moisture-related damages were from other mechanisms." See Linehan Dep. at 35, 58.

Divine retained the services of Thomas Miller, a professional engineer of Structural Engineering and Inspections, Inc., to conduct a "limited water intrusion assessment" at the Property. See Rockhill Motion, Ex. B (Doc. 45-2; Miller Report) at 1; Deposition of Thomas Miller (Doc. 47-4; Miller Dep.) at 9-11. Miller inspected the Property on March 26, 2014, and issued a Report on March 31, 2014, in which he concludes that "within a reasonable professional probability, water intrusion as a result of Tropical Storm Debby was a cause of water damage to property." See Miller Report at 1, 3; Miller Dep. at 16, 18-19. Miller explains that he understood the scope of his investigation to be determining whether Tropical Storm Debby "was a cause of water damage to the property," and he was not tasked with distinguishing how the water intruded or "looking for damage as a result of wind." See Miller Dep. at 52-53. Similar to the HSA Report, the Miller Report identifies cracks in the masonry and a damaged waterproofing roof system as locations where water from Tropical Storm Debby intruded. See Miller Report at 6-7. However, the Miller Report does not include any analysis of the initial cause of those failures, see id., and during his deposition, Miller stated that he has no opinion as to what caused the masonry cracks or waterproofing system

failures. <u>See</u> Miller Dep. at 40-42.  Nonetheless, when questioned specifically about wind damage, Miller identified two pictures of the Property, both showing uplifted portions of the roof, and stated his belief that those pictures could depict wind damage. <u>Id.</u> at 47-48, 50-51.[7] Significantly, Miller does not state that wind actually caused those damages, only that wind cannot be ruled out as a contributing cause.  <u>Id.</u>  Complicating Miller's task is the fact that Divine replaced the roof of the Property prior to Miller's inspection, thus his opinion is based only on his review of pictures of the prior roof, not an inspection of the roof itself.  <u>Id.</u> at 34-35; Miller Report at 7.

Prior to this lawsuit, Divine also retained the services of Al Brizuela Engineering, Inc. to conduct an investigation of the Property.  <u>See</u> Complaint ¶ 15, Ex. D.  Alfredo Brizuela, a licensed professional engineer, inspected the Property on September 6, 2012, and prepared a Proof of Loss Evaluation and Assessment Report (ABE Report) dated September 26, 2012.  <u>See</u> Complaint, Ex. D at 1-4.  Although Divine attached the ABE Report to the Complaint and notes its existence in the briefing, Divine does not actually cite to any of Brizuela's findings in its Response or Motion, nor does Divine rely on those findings to support its arguments.  <u>See</u> Divine Response at 11; Divine Motion at 15-16.  Moreover, Divine did not designate Alfredo Brizuela as an expert in this case.  <u>See</u> Rockhill Response at 1, Ex. 1.  As such, it appears that Divine does not intend for this Court to consider the materials in the ABE Report in resolving the summary judgment motions.  <u>See</u> Rule 56(c)(1)(A), (c)(3) (stating that a party must support its arguments by "citing to particular

---

[7] Specifically, Miller references Picture 19 of his Report, <u>see</u> Miller Report at 8, and a picture at the bottom of page 26 of a report prepared by Al Brizuela Engineering, Inc, <u>see</u> Complaint, Ex. D at 26.

parts of materials in the record," and that a court need consider "only the cited materials");

Rule 37(c)(1) (providing that if a party fails to disclose an expert witness, the party may not

use that witness to supply evidence on a motion or at trial).  Significantly, even if Divine did

intend for the Court to consider the ABE Report, the Report is neither sworn nor otherwise

verified, and Divine has made no showing that this unsworn evidence is admissible as

presented, or could be presented in an admissible form at trial.  See Carr v. Tatangelo, 338

F.3d 1259, 1273 n.26 (11th Cir. 2003); Scott v. Edinburg, 346 F.3d 752, 759 (7th Cir. 2003)

("[The expert's] report was introduced into the record without any supporting affidavit

verifying its authenticity and is therefore inadmissible and cannot be considered for purposes

of summary judgment."); see also Macuba v. Deboer, 193 F.3d 1316, 1322 (11th Cir. 1999)

("[A] district court may consider a hearsay statement in passing on a motion for summary

judgment if the statement could be reduced to admissible evidence at trial or reduced to

admissible form." (internal quotations omitted)); Rule 56, Advisory Committee Notes to 2010

Amendments, Subdivision (c)(2) ("The burden is on the proponent to show that the material

is admissible as presented or to explain the admissible form that is anticipated.").

### III.     Applicable Law[8]

Pursuant to Florida law, "interpretation of an insurance policy is a question of law to

be decided by the court."  Gulf Tampa Drydock Co. v. Great Atl. Ins. Co., 757 F.2d 1172,

1174 (11th Cir. 1985) (applying Florida law).  In so doing, the court must construe the

"contract in its entirety, striving to give every provision meaning and effect."  Dahl-Eimers v.

---

[8] The parties do not dispute that Florida law applies to this diversity action.  See generally Rockhill Motion; Divine Motion (both applying Florida law).

Mut. of Omaha Life Ins. Co., 986 F.2d 1379, 1382 (11th Cir. 1993) (citing Excelsior Ins. Co. v. Pomona Park Bar & Package Store, 369 So.2d 938, 941 (Fla. 1979)).  Where a term in an insurance policy is ambiguous, a court must "construe it in favor of the insured and against the insurer."  Gas Kwick, Inc. v. United Pac. Ins. Co., 58 F.3d 1536, 1539 (11th Cir. 1995) (citing Davis v. Nationwide Life Ins. Co., 450 So.2d 549, 550 (Fla. 5th DCA 1984)).  However, a "court cannot rewrite an insurance contract to extend coverage beyond what is clearly set forth in the contractual language."  Szczeklik v. Markel Int'l Ins. Co., Ltd., 942 F. Supp. 2d 1254, 1260 (M.D. Fla. 2013) (quoting Fla. Residential Prop. & Cas. Joint Underwriting Ass'n v. Kron, 721 So. 2d 825, 826 (Fla. 3d DCA 1998)).  Although the insured bears the burden of proving that a claim is covered by the insurance policy, the "burden of proving an exclusion to coverage is . . . on the insurer."  LaFarge Corp. v. Travelers Indem. Co., 118 F.3d 1511, 1516 (11th Cir. 1997).  However, if there is an exception to the exclusion, "the burden returns to the insured to prove the exception and show coverage."  See Mid-Continent Cas. Co. v. Frank Casserino Constr., Inc., 721 F. Supp. 2d 1209, 1215 (M.D. Fla. 2010); see also LaFarge Corp., 118 F.3d at 1516; E. Fla. Hauling, Inc. v. Lexington Ins. Co., 913 So. 2d 673, 678 (Fla. 3d Dist. Ct. App. 2005).

## IV.   Discussion

It is undisputed that the interior of the Property sustained water damage as a result of Tropical Storm Debby.[9]  See Complaint ¶ 9; Answer ¶ 9; Linehan Report at 2; O'Connor

---

[9] Divine never specifically lists the damages that it maintains were caused by Tropical Storm Debby and covered under the Policy.  Nonetheless, Divine's claim appears to consist solely of the water intrusion damage to the buildings and the personal property contained therein.  See Divine Response at 1.  Aside from the unadhered portions of the roof which Miller identified as possibly caused by wind, Divine does not cite to any evidence of damages caused by Tropical Storm Debby separate and apart from the water intrusion damages.

Dep. at 79-80.  Divine maintains that this damage is covered under the Policy because it is an "all-risk" policy and thus provides coverage for loss "due to water and windstorm."  See Divine Response at 8.  However, the Policy specifically provides that Rockhill does not cover losses listed in the Limitations section, and that section includes a provision which states that damage to the "interior of any building or structure, or to personal property in the building or structure, caused by or resulting from rain, snow, sleet, ice, sand or dust, whether driven by wind or not . . ." is not covered.  See Policy at 80 (Part C.1.c.).  This paragraph clearly and unambiguously excludes coverage for water intrusion damage caused by wind-driven rain. Thus, unless Divine can present evidence that the damages for which it seeks coverage fall within an exception to this limitation, the water intrusion damages to the interior of the Property and the personal property contained therein, caused by the wind-driven rain of Tropical Storm Debby, are not covered under the Policy.  See Fla. Windstorm Underwriting v. Gajwani, 934 So. 2d 501, 502, 505-06 (Fla. 3d Dist. Ct. App. 2005).  As described above, there is an exception to the water intrusion limitation which allows coverage for water intrusion damage only if "[t]he building or structure first sustains damage by a Covered Cause of Loss to its roof or walls through which the rain, snow, sleet, ice, sand or dust enters."  Id.  Under Florida law, it is Divine's burden to establish that the damage at issue falls within this exception to the Policy's coverage limitation.[10]  See Mid-Continent Cas. Co.,

---

[10] Divine argues that its only burden is to prove that a loss occurred to the Property while the Policy was in force.  See Divine Motion at 10; Divine Response at 13.  Rockhill maintains that Divine bears the burden of proving that the loss falls within the "limitations" of coverage.  See Rockhill Response at 10.  The Court disagrees with both parties.  The limitation provision at issue here is in the nature of an exclusionary provision such that Rockhill bears the initial burden to establish that the limitation operates to exclude coverage here. See Penzer v. Transp. Ins. Co., 545 F.3d 1303, 1310 (11th Cir. 2008) ("Provisions excluding or limiting liability of the insurer are construed . . . strictly against the insurer . . . and the burden of proof rests on the insurance company to demonstrate that coverage was inapplicable." (internal quotation omitted) (emphasis added)); 17
(continued...)

721 F. Supp. 2d at 1215; Gajwani, 934 So. 2d at 506 (finding no coverage under similar provision where insured failed to present evidence that rain entered through openings in roof or walls created by hurricane because it was insured's burden to prove an exception to the exclusion).

To support its claim for coverage, Divine argues that "[t]here is nothing in the policy that states that wind has to cause damage to the exterior of the building or create an opening . . . ." See Divine Response at 10. According to Divine, "[t]he subject policy does not require that the building or structure sustain an opening in the roof or wall, and also does not require that the opening be due to the direct force of hurricane or other wind." Id. at 14-15. Instead, Divine emphasizes that the exception only requires the Property to "sustain damage by a Covered Cause of Loss . . . ." Id. at 14. Divine's argument is without merit. Divine ignores the portion of the exception that requires the rain to reach the interior of the Property through damage to the building caused by a Covered Cause of Loss. Thus, the fact that Tropical Storm Debby caused water damage to the interior of the Property and the personal property therein is not sufficient on its own to establish coverage.[11] Divine must show how the wind-

---

[10](...continued)
A Steven Plitt, et al., Couch on Insurance § 254:12 (3d ed. 2014) ("The insurer bears the burden of proving the applicability of policy exclusions and limitations . . . ." (emphasis added)). Nonetheless, as set forth above, Divine bears the burden of proving that coverage does exist due to the exception.

[11] In support of its contention that its damages are covered because they were "caused" by Tropical Storm Debby, Divine cites to the portion of the Policy setting forth the terms of the Windstorm or Hail Deductible. See Divine Response at 8. The endorsement states that:

> [t]he Windstorm or Hail Deductible . . . applies to loss or damage to Covered Property caused directly or indirectly by Windstorm or Hail, regardless of any other cause or event that contributes concurrently or in any sequence to the loss or damage. If loss or damage from a covered weather condition other than Windstorm or Hail occurs, and the loss or damage would not have occurred but for the Windstorm or Hail, such loss or damage shall be considered to be caused by Windstorm or Hail and therefore part of the Windstorm or Hail occurrence.

See Policy at 73. This provision means that the windstorm or hail deductible applies any time windstorm or hail
(continued...)

driven rain of Tropical Storm Debby reached the interior of the Property.  While Divine is correct that the exception does not necessarily require that the "Covered Cause of Loss" be the direct force of the Tropical Storm or other wind, Divine fails to identify what other "Covered Cause of Loss" caused the damage to the roof or walls to permit the rain to enter the Property.

To the extent Divine relies on Miller's testimony as evidence of wind-damage, the Court finds Miller's opinion that wind "could not be ruled out" as a cause of the roof damage to be insufficient to create an issue of fact as to whether wind from Tropical Storm Debby created an opening through which the rain entered the Property.  Divine has presented the sworn testimony of Linehan who testified, following his personal examination of the roof, that the unadhered portions of the cap sheet were not caused by wind.  In contrast, Miller who offered his opinion on a matter outside the scope of his investigation and without examining the damaged roof, stated only that he could not rule out wind as the cause of the damage depicted in two pictures of the roof.  He does not opine that the damage was actually caused by wind or by Tropical Storm Debby.  Moreover, Miller offers no analysis which contradicts Linehan's reasoning.  Miller's inability to eliminate wind as a cause of the damage shown in the pictures is insufficient to create a genuine issue for trial as to the question of whether wind did in fact cause that damage, as required to fall within the exception.  It is Divine's

---

[11](...continued)

directly or indirectly contribute to a loss, including when another covered weather condition occurs and causes damage that would not have occurred but for the windstorm or hail.  See Policy at 73; see also Paulucci v. Liberty Mut. Fire Ins. Co., 190 F. Supp. 2d 1312, 1322 (M.D. Fla. 2002).  This language does not address or expand the Policy's coverage and does not mean, as Divine appears to contend, that the Policy covers all loss or damage caused directly or indirectly by a windstorm, regardless of any other cause or event contributing to the damage.  See Divine Motion at 13, 16.

burden to demonstrate that the exception applies.  To satisfy this burden Divine presents only an opinion that wind "could not be ruled out" as a cause of the roof damage. Linehan offers an affirmative opinion in which he rules out wind from Tropical Storm Debby as the cause of damage to the roof structure.  Miller does not dispute this opinion or challenge Linehan's basis for it.  Instead, having reviewed only photographs, Miller opines only that he is unable to rule out wind as the cause of that damage.  No reasonable juror could find solely based on Miller's inability to rule out that the wind from Tropical Storm Debby actually caused the damage to the roof through which water entered the Property.  A mere scintilla of evidence is insufficient to create an issue of fact, and therefore, the Court finds that Divine fails to demonstrate any issue of fact on whether Tropical Storm Debby caused damage to the roof or walls of the Property.  See Herrington, 381 F.3d at 1247.

Here, the undisputed evidence shows that the wind-driven rain of Tropical Storm Debby entered the Property due to the deterioration of the roof's weatherproofing system, deficient repairs, inadequate maintenance, leaks under doors, insufficient weatherproofing of air conditioning units, and the over-saturation of certain components of the concrete walls. See HSA Report at 1-2.  As such, the water intrusion damages satisfy the exception to the limitation on coverage only if these causes are "Covered Causes of Loss" under the Policy. Upon review of the Policy Exclusions, the Court determines that they are not.  "Wear and tear," "decay," and "deterioration" are specifically excluded causes of loss.[12]  See Policy at

---

[12] The Court notes that the "wear and tear," "decay" and "deterioration" exclusion contains an exception, not applicable here.  The exception provides that if one of these excluded causes of loss "results in a 'specified cause of loss' or building glass breakage, we will pay for the loss or damage caused by that 'specified cause of loss' or building glass breakage." See Policy at 77-78.  Although the definition of "specified cause of loss" does include "water damage," the definition of water damage under this provision is limited. "Water damage"

<span style="float:right">(continued...)</span>

77 (Part B.2.d.(1)-(2)).   In addition, the Policy excludes loss or damage caused by or resulting from faulty, inadequate or defective "[d]esign, specifications, workmanship, repair, construction . . ." and "maintenance."  <u>See</u> Policy at 78-79 (Part B.3.c.(2),(4)).   Thus, the damages which allowed water to intrude during Tropical Storm Debby, as identified in the HSA Report, are all specifically excluded from coverage, such that it appears any resulting damage does not satisfy the exception to the water intrusion limitation.

As to the "faulty workmanship" exclusion, Divine argues that the exclusion does not preclude coverage because it contains an "ensuing loss" exception.  <u>See</u> Divine Motion at 12-16.  The "ensuing loss" exception provides that "if an excluded cause of loss that is listed in 3.a. through 3.c. <u>results in</u> a Covered Cause of Loss, we will pay for the loss or damage <u>caused by</u> that Covered Cause of Loss."  <u>See</u> Policy at 78 (Part B.3.) (emphasis added). Divine's reliance on this exception is unavailing.  For the ensuing loss exception to apply, the inadequate maintenance and defective repairs must "result in" a Covered Cause of Loss. Here, the inadequate maintenance, faulty design, and defective repairs "resulted in" water intrusion.   Water intrusion is not a "Covered Cause of Loss" under the Policy unless the water entered the Property through damage caused by a "Covered Cause of Loss."   The water entered the Property through damage caused by inadequate maintenance, faulty design, and defective repairs, but as stated above, these faulty workmanship damages are

---

[12](...continued)
as a "specified cause of loss" is defined as the "accidental discharge or leakage of water or steam as the direct result of the breaking apart or cracking of a plumbing, heating, air conditioning or other system or appliance (other than a sump system including its related equipment and parts), that is located on the described premises and contains water or steam."  <u>See</u> Policy at 84.  Because there is no evidence that any of the damages at issue in this lawsuit were caused by accidental discharge or leaking of any system or appliance, the water damage here does not constitute a "specified cause of loss" within the meaning of the exception.

not Covered Causes of Loss.  The key factor missing from this circular argument is the identification of any cause of loss that is <u>not</u> excluded from the Policy's coverage.  <u>See</u> <u>GTE Corp. v. Allendale Mut. Ins. Co.</u>, 372 F.3d 598, 615-16 (3d Cir. 2004) (holding that business interruption losses caused by excluded peril of design defect not covered by design defect's ensuing loss provision where business interruption losses are only covered losses if caused by a covered peril).  To the extent Divine relies on Tropical Storm Debby as the "Covered Cause of Loss," this reliance is misplaced.  Divine has not shown that the inadequate maintenance and defective repairs "resulted in" damage to the buildings <u>caused by Tropical Storm Debby</u> through which the water intruded.[13]  Thus, because Divine fails to present any evidence that a "Covered Cause of Loss" damaged the walls or roof of the Property allowing the wind-driven rain of Tropical Storm Debby to intrude, the Court determines that the exception to the Policy's water intrusion limitation does not apply.  As such, the damage to the interior of the Property and the other property contained therein is not covered under the Policy.

Alternatively, Divine argues that Rockhill has waived or is estopped from denying coverage based on the condition, state of repair, and maintenance of the Property. <u>See</u> Divine Response at 15-18; Divine Motion at 16-19.  It is well established under Florida law that the doctrines of estoppel and waiver cannot be applied to create or extend insurance coverage.  <u>See</u> <u>Six L's Packing Co., Inc. v. Fla. Farm Bureau Mut. Ins. Co.</u>, 268 So. 2d 560,

_____

[13] Divine cites to <u>Bartram, LLC v. Landmark Am. Ins. Co.</u>, 864 F. Supp. 2d 1229 (N.D. Fla. 2012) in support of its contention that the ensuing loss exception provides coverage in this case.  The Court acknowledges that <u>Bartram</u> appears to interpret similar policy provisions in a way that supports Divine's argument.  <u>See</u> <u>Bartram, LLC</u>, 864 F. Supp. 2d at 1236.  Nonetheless, <u>Bartram</u> is not controlling authority, and to the extent <u>Bartram</u> conflicts with the analysis herein, the Court finds <u>Bartram</u> unpersuasive.

563 (Fla. 4th Dist. Ct. App. 1972) ("[W]hile an insurer may be estopped by its conduct from seeking a Forfeiture of a policy, the insurer's Coverage or restrictions on the Coverage cannot be extended by the doctrine of waiver and estoppel.").  The distinction between a forfeiture provision and one of coverage turns on "whether the loss was covered by the contract in the first instance and is asserted to have been lost or nullified as a consequence of the actions of the insured; if this is the case, then the provision is one of forfeiture." Lloyds Underwriters at London v. Keystone Equip. Fin. Corp., 25 So. 3d 89, 92 (Fla. 4th Dist. Ct. App. 2009).  Thus, for example, "clauses that are inclusionary or exclusionary, that outline the scope of coverage, or that delineate the dollar amount of liability" pertain to coverage, while "forfeiture clauses often include provisions such as filing a timely notice of claim and submitting proofs of loss, and are invoked to avoid liability for existing coverage." Id. at 92-93 (internal quotation omitted).  As the exclusionary provisions at issue here plainly pertain to coverage, it appears Divine may not rely on the doctrines of waiver or estoppel to create coverage where none exists.  The Court notes that Florida law does recognize an exception to this principal in that "promissory estoppel may be utilized to create insurance coverage where to refuse to do so would sanction fraud or other injustice." Crown Life Ins. Co. v. McBride, 517 So. 2d 660, 662 (Fla. 1987).  However, Divine fails to cite to this exception in support of its estoppel argument, and the exception does not appear to be applicable here. Indeed, Divine fails to provide any evidence that Rockhill made an affirmative representation to Divine that it would not enforce its rights under the relevant exclusion and limitation provisions of the Policy.  Nor does Divine cite to any evidence that it relied on Rockhill's

purported representations in failing to obtain other insurance or make necessary repairs prior to Tropical Storm Debby.  See Divine Motion at 18-19.

Regardless, Divine's estoppel and waiver arguments are unavailing because Divine failed to allege those theories of relief in its Complaint.  Indeed, the Complaint does not include any reference to waiver or estoppel, or any other language to suggest that Divine is asserting coverage on the basis of those principles.  See generally Complaint.  Although Divine now asserts waiver and estoppel as a basis for coverage in the summary judgment briefing, Eleventh Circuit precedent precludes a plaintiff from amending its complaint through argument at the summary judgment phase of proceedings.  See Flintlock Constr. Servs., LLC v. Well-Come Holdings, LLC, 710 F.3d 1221, 1228 (11th Cir. 2013).  Indeed, in Flintlock, the Eleventh Circuit criticized a district court for addressing a plaintiff's argument for insurance coverage based on estoppel, even where the defendant did not object, because the claim was first raised at summary judgment and not included in the complaint.  Id. at 1226-28.  As such, the Court rejects Divine's estoppel and waiver arguments as an improper attempt to amend the Complaint at summary judgment without seeking leave of Court.  Id. at 1228.[14]  In light of the foregoing, the Court concludes that Rockhill has established that Divine's damages are excluded from coverage under the Policy.  Moreover, Divine fails to

---

[14] Divine also relies on waiver and estoppel theories to argue, without citation to any legal authority, that it is entitled to damages stemming from the removal of portions of the damaged carpet and sheetrock from the Property.  See Divine Motion at 20-21.  According to Divine, Michael Bowler, Rockhill's corporate representative, instructed Divine to remove these items and Divine relied to its detriment on those instructions in that it incurred the expense of removal but has not been reimbursed by Rockhill.  Id. at 20.  Notably, Divine does not cite to any evidence that Rockhill promised to cover those expenses, nor does Divine maintain that it would not have removed these damaged materials but for Rockhill's instruction.  Regardless, this theory of relief is not included in the Complaint and therefore, is due to be rejected for the reasons discussed above.  In light of the Eleventh Circuit's admonition in Flintlock, the Court will not allow Divine to impliedly amend its Complaint at summary judgment, without leave of Court, to add additional theories of relief.  See Flintlock Constr. Servs., LLC, 710 F.3d at 1227-28.

create any issue of fact as to whether an exception to those exclusions applies.  As such,

Rockhill's Motion is due to be granted and Divine's Motion is due to be denied.  Accordingly,

it is

**ORDERED**:

1.    Defendant's Motion for Summary Judgment (Doc. 45) is **GRANTED.**

2.    Plaintiff's Motion for Partial Summary Judgment and Supporting Memorandum

of Law (Doc. 65) is **DENIED.**

3.    The Clerk of the Court is directed to enter **JUDGMENT** in favor of Defendant

Rockhill Insurance Company and against Plaintiff Divine Motel Group, LLC

d/b/a Royal Inn.

4.    The Clerk of the Court is further directed to terminate any remaining pending

motions and deadlines as moot and close the file.

**DONE AND ORDERED** at Jacksonville, Florida on July 7, 2015.

**MARCIA MORALES HOWARD**
United States District Judge

lc11
Copies to:

Counsel of Record
Pro Se Parties

-22-